IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01891-PAB

RONALD C. TAYLOR,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

     Defendant.

---

## ORDER

This matter comes before the Court on plaintiff Ronald C. Taylor's complaint [Docket No. 6] filed on September 7, 2010.  Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83c.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I.  BACKGROUND

Plaintiff applied for disability benefits on November 30, 2006.  R. at 151.  He claimed that he was unable to work due to disability as of October 8, 2006.  *Id.* Plaintiff's claim was initially denied and plaintiff requested a hearing.  R. at 90.  An Administrative Law Judge ("ALJ") held a hearing on February 4, 2009, R. at 28-42, and held a supplemental hearing on June 3, 2009, R. at 28-42, after sending plaintiff to a

consultive examiner.  On July 28, 2009, the ALJ issued a decision denying plaintiff's

application.  R. at 25.  In his decision, the ALJ found that plaintiff had "the following

severe impairments: abdominal pain and diarrhea status post abdominal stab wound,

pain and limited motion of the right third finger status post bite injury, left arm and hand

numbness status post fractures of the left second and third fingers, posttraumatic stress

disorder (PTSD), depression, and dementia."  R. at 17.  The ALJ determined, however,

that these impairments, alone or in combination, did not meet one of the listed

impairments in the regulations.  *See* R. at 18.  The ALJ concluded that plaintiff retained

the residual functional capacity ("RFC") to

> understand, remember, and carry out routine and repetitive tasks, but not
> complex or detailed instructions; should have no frequent changes in work
> settings or duties; should have no public interaction and only occasional
> interaction with supervisors and coworkers; can lift and carry 10 pounds
> frequently and 20 pounds occasionally; can sit for one hour at a time and a
> total of six hours in an eight-hour workday; can stand and walk for one hour
> at a time each and a total of six hours in an eight hour workday each; can
> occasionally stoop and kneel; and can frequently reach, handle and finger
> with the (dominant) right upper extremity.

R. at 18-19.

Based upon these findings and the testimony of a vocational expert ("VE"), the

ALJ found that, although plaintiff could not perform his past relevant work, he could

perform jobs existing in significant numbers in the national economy.  R. at 24.

Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time

period.  R. at 24-25.  The Appeals Council denied plaintiff's request for review of this

denial.  R. at 1.  Consequently, the ALJ's decision is the final decision of the

Commissioner.

2

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  Plaintiff's Objections to the ALJ Decision

In his appeal, plaintiff presents four objections to the ALJ's decision: (1) the ALJ violated plaintiff's due process rights by selecting a consultive examiner without the plaintiff's input; (2) the ALJ mishandled the medical evidence; (3) the ALJ did not fully develop the record as to plaintiff's mental or physical limitations; and (4) the ALJ erred at step five in finding that substantial jobs existed in the national economy that plaintiff can perform.

### 1.  Selection of Consultive Examiner

Plaintiff objects that the ALJ violated his due process rights by selecting Dr. Michael Finch to perform a consultative examination of plaintiff without soliciting plaintiff's opinion as to who should perform the examination.  Plaintiff argues that Dr. Finch was an inappropriate choice to evaluate his ability to use his injured hand because he was an internist.  The Court finds that the ALJ in no way abridged plaintiff's due process rights.  As defendant points out, "the Secretary has broad latitude in ordering consultative examinations."  *See Hawkins v. Chater*, 113 F.3d 1162, 1166

(10th Cir. 1997).  Dr. Finch was an appropriate medical source to determine plaintiff's physical limitations.  Due process does not require the Commissioner to provide a disability claimant with an examination by a specialist with years of particularized experience in each condition the claimant may have.  Moreover, plaintiff does not argue that the ALJ violated any agency regulations by selecting Dr. Finch.  The ALJ provided plaintiff a fair opportunity to address Dr. Finch's report and any objections he had to it by holding a supplemental hearing; therefore, the ALJ did not violate plaintiff's due process rights.  *See Yount v. Barnhart*, 416 F.3d 1233, 1235-36 (10th Cir. 2005) (due process requires a "meaningful opportunity to address the post-hearing evidence").

Plaintiff further argues that Dr. Finch's opinion is not substantial evidence because he filled out a "box-checking" form that is inadequately supported by his narrative report.  Specifically, plaintiff argues that there is no record of any physical examination by Dr. Finch that would support Dr. Finch's finding that plaintiff can complete fingering or handling tasks with his right hand for at least 161 minutes daily. But Dr. Finch's narrative report included a full physical examination, with findings as to plaintiff's fine motor manipulation and grip in both hands.  *See* R. at 486 ("Fine motor manipulation is intact"; "Hand: Grip on the right 4/5 and on the left 5/5.").  Moreover, Dr. Finch's report reflects that he examined plaintiff's full medical record.  Therefore, the ALJ did not err in relying on Dr. Finch's opinion.  *Cf. Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence").

### 2.  Medical Evidence

Plaintiff objects to the ALJ's assessment of his medical records in a number of ways.  First, plaintiff claims that the ALJ violated the treating source rule by rejecting the opinions of his treating physicians.  An ALJ is required to give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  If an ALJ decides not to assign controlling weight to the treating source's opinion, he must give "specific, legitimate reasons for his decision."  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  Ultimately, where an ALJ does not assign a treating source's opinion controlling weight, he must still determine its appropriate weight by looking to the factors which apply to all medical opinions and give good reasons for the weight he ultimately assigns it.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

The ALJ rejected several treating physicians' opinions in reaching his conclusion that plaintiff was not disabled.  First, the ALJ rejected the opinion of Dr. Nicole Joseph, a treating physician who opined that plaintiff was unable to work for six months or more due to his post-traumatic stress disorder ("PTSD"), anxiety, chronic abdominal pain, and right hand injury.  *See* R. at 290-91.  The ALJ rejected this opinion because "it does not set forth specific findings in its support or provide an explanation and it is a conclusion on an issue reserved to the Commissioner."  R. at 21.  Next, the ALJ considered Dr. Scott Sutton's opinion that plaintiff has been unable to work since he was stabbed in the abdomen and chest in October 2006.  *See* R. at 288.  The ALJ accorded Dr.

Sutton's opinion no weight "because it is on an issue reserved to the Commissioner, (see 20 CFR 404.1527, 416.927), it does not set forth the claimant's specific restrictions, and it is not supported by the reports and observations documented in subsequent treatment records."  R. at 21.  Finally, the ALJ rejected the opinion of another physician, whose name is illegible on the form, who opined that plaintiff was unable to work due to his hand injury, PTSD, major depressive disorder, anxiety, and frequent bowel movements.  *See* R. at 416.  The ALJ rejected this opinion because "it is an opinion on an issue reserved to the Commissioner, is not supported by the examination findings that are discussed below [the opinion] nor by an explanation, and it is inconsistent with the well supported opinion from an examining physician."  R. at 22.  The Court finds no error in the ALJ's rejection of any of these opinions.  Little explanation or objective support accompanied each opinion.  The ALJ gave specific, legitimate reasons for rejecting these opinions and his decision reflects his consideration of the appropriate factors.  *See Watkins*, 350 F.3d at 1301.

Next, plaintiff objects that the ALJ did not give proper weight to several Global Assessment Functioning ("GAF") scores reflected in plaintiff's treatment records.  "The GAF scale is used by clinicians to report an 'individual's overall level of functioning.'" *Weigel v. Astrue*, 2011 WL 2193396, at *2 n.3 (10th Cir. June 7, 2011) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000)).  On April 3, 2006, a source at the Denver Health Medical Center assessed plaintiff's GAF at 50.[1]  R. at 279.  On January 31,

---

[1]  A GAF score of 41-50 corresponds to "serious symptoms . . . OR any serious impairment in social, occupational, or school functioning."  *DSM-IV-TR* at 34.

2008, Registered Nurse Andreas Brueggler performed a mental status exam on plaintiff and reported that his GAF was 45.  R. at 368.  On May 6, 2008, Brueggler assessed plaintiff again, reporting that his GAF was 50.  R. at 380.  Although these GAF scores are low enough to be pertinent to an assessment of plaintiff's limitations, "a low GAF score does not alone determine disability . . . rather, it is a piece of evidence to be considered with the rest of the record."  *Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011).  The ALJ considered and explicitly discussed each of these GAF scores, noting other findings from the treatment records containing them, in formulating plaintiff's RFC.  *See* R. at 20.  Moreover, these scores do not directly conflict with the mental limitations the ALJ included in plaintiff's RFC.  Therefore, the Court finds that the ALJ did not err in assessing this evidence.

Plaintiff also objects to the ALJ's findings regarding the GAF score assessed during a consultive psychological exam.  On April 1, 2008, consulting examiner Brett Valette, Ph.D., found plaintiff's GAF to be 40 to 45.  R. at 358.  However, Dr. Valette expanded his opinion of how plaintiff's conditions and GAF affected his ability to work by completing a medical source statement regarding plaintiff's ability to do work-related activities.  Dr. Valette assigned plaintiff no limitations in his ability to understand and remember simple instructions and to carry out simple instructions; moderate limitations in his ability to make simple work-related decisions, interact appropriately with the public, interact appropriately with supervisor(s), interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in work setting; and marked limitations in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.  R.

at 360-61.  These limitations do not conflict with the mental limitations the ALJ included

in plaintiff's RFC.  *See* R. at 18 (stating that plaintiff can "understand, remember, and

carry out routine and repetitive tasks, but not complex or detailed instructions; should

have no frequent changes in work setting or duties; should have no public interaction

and only occasional interaction with supervisors and coworkers").  Moreover, the ALJ

explicitly considered this GAF score and the entirety of Dr. Valette's report.  *See* R. at

21.  Thus, the Court finds no error here.

Finally, plaintiff appears to object that the ALJ improperly ignored medical

records assessing plaintiff's mental limitations using a tool called "Domain Scales."  *See*

R. at 384-88.  This evaluation was performed by Licensed Professional Counselor

Cathy Manley at Mental Health Center of Denver; therefore, it was not the opinion of a

treating source potentially warranting controlling weight.  *See* 20 C.F.R. § 404.1513

(defining acceptable medical sources); *Weaver v. Astrue*, 353 F. App'x 151, 155 (10th

Cir. 2009) ("Only 'acceptable medical sources' can . . . be considered treating sources

whose medical opinions may be entitled to controlling weight.").  Moreover, the ALJ's

decision reflects his consideration of plaintiff's records from Mental Health Center of

Denver during this time period.  *See* R. at 20; *Clifton v. Chater*, 79 F.3d 1007, 1009-10

(10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the

evidence, but an ALJ is not required to discuss every piece of evidence.").  Accordingly,

the Court finds the ALJ did not err in his assessment of the medical evidence.

### 3.  Development of the Record

Plaintiff argues that the ALJ neglected his duty to develop the record as to both

plaintiff's physical and mental limitations.  The Court disagrees.  The record contains ample treatment records relating to plaintiff's mental and physical health as well as reports from two consultive examinations.  These records sufficiently explored plaintiff's conditions.  Although the nonadversarial nature of social security proceedings "imposes a duty on the ALJ 'to ensure that an adequate record is developed . . . consistent with the issues raised,'" the ALJ met that duty here.  *See Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).

### 4.  Significant Number of Jobs

Plaintiff contends that the ALJ erred at step five by finding that jobs that plaintiff could perform existed in significant numbers in the national economy.  The ALJ found, pursuant to the VE's testimony, that plaintiff could perform the jobs of assembler and small products assembler, of which there are 3,300 positions in Colorado and 356,000 nationally, as well as production inspector and checker, of which there are 1,700 positions in Colorado and 141,000 positions nationally.  *See* R. at 24.  As defendant points out, the relevant measure of significant jobs at step five is the number of jobs existing in the national economy.  *See* 42 U.S.C. § 423(2)(A) ("An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives"); *Raymond v. Astrue*, 621

F.3d 1269, 1274 (10th Cir. 2009) ("the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy").  A significant number of jobs existed in the national economy that plaintiff could perform and the Court finds the ALJ did not err at step five.  *See Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding 152,000 jobs in the national economy sufficient).

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the July 28, 2009 decision of the Commissioner that plaintiff was not disabled is **AFFIRMED**.


DATED July 28, 2011.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge